STATE, Plaintiff-Respondent, v. ENGLER, Defendant-Appellant.

*No. 76–745–CR. Submitted on briefs September 6, 1977.—
Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 97.)

For the appellant the cause was submitted on the brief of *Francis J. Slattery* and *Nolan, Engler, Yakes & Bauer, S. C.* of Oshkosh.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

ROBERT W. HANSEN, J.   The Youthful Offenders Act was established by the 1975 legislature to provide ". . . an alternative to procedures in the criminal code relating to conviction and sentencing" of persons between the ages of sixteen and twenty-one years.[1]   Under this Act a defendant who is found guilty of a felony other than first-degree murder and who is determined by the trial court to be a ". . . person who will benefit and society will not be harmed by disposition as a youthful offender," is declared by the court to be a youthful offender.[2]   Once such determination and declaration of status has been made, the trial court has only two options: (1) to place the offender on probation, or (2) to

---

[1] Sec. 54.01(2), Stats.

[2] Sec. 54.03(1)(b), Stats.

commit the offender to the custody of the state department of health and social services.[3]

When, as in the case before us, the trial court chooses the option of placing the defendant on probation, the statute permits the trial court to impose reasonable conditions of probation. The statute provides:

"The order of probation shall specify the court's reasons for placing the youthful offender on probation and may impose reasonable conditions of probation including, but not limited to, the payment of restitution, the payment of costs of prosecution and the payment of support. The order shall have the effect of placing the offender in the custody of the department subject to the control of the department under such rules and regulations as the department may prescribe."[4]

When placing this defendant on probation and attaching as a condition of probation that this defendant be confined for six months in the county jail with work release privileges, the trial court spelled out his reasons for the disposition as follows:

". . . This isn't simple use. It is cocaine, and it is a sale. . . . I think that you are truly repentant, and I am hopeful that this is going to be remedial.

"It is, however, necessary to exercise the power of punishment if a deterrent is to have any meaning at all. If that power is not exercised, there is no one in this community who will deter from involvement in drugs. . . . I find it, therefore, necessary to impose as a condition of probation confinement in the Winnebago County Jail [NOTE: subsequently changed to Outagamie county jail] for a period of six months with work release privileges."

The defendant does not challenge the requirement of six months confinement with work release privileges as

---

[3] Sec. 54.03 (4) (a), Stats. *See also:* Secs. 54.04 and 54.07, Stats.
[4] Sec. 54.04 (2), Stats.

a reasonable condition of probation. Rather, he challenges the authority of a sentencing judge, under any circumstances, to attach such a condition to the imposition of probation under the Youthful Offenders Act.

When a statute is to be construed, the threshold question is whether the term used in the statute, in this case the phrase "reasonable conditions of probation," is ambiguous. Putting aside the question not here raised of whether the condition imposed is reasonable under the circumstances of a particular case, we find no ambiguity in the legislature's provision that a judge may attach conditions to probation which are reasonable. One may challenge whether a particular condition is reasonable under the circumstances, but we cannot agree that the legislature, by insisting that conditions of probation be reasonable, has created an ambiguity. If the statute provided that "any conditions" may be attached to probation, it would mean what it said. To require conditions of probation to meet the test of reasonableness does not create vagueness or ambiguity of meaning.

When the statutory language is clear and unambiguous as is the requirement of reasonableness as a condition of probation under the Youthful Offenders Act, this court is to arrive at the intention of the legislature by giving the language its ordinary and accepted meaning.[5] As this court has put it, " 'It is impermissible to apply rules of statutory construction to ascertain legislative intent when the legislation is clear on its face.' "[6] Clear it is, on the face of this statute, that the trial court

[5] *State ex rel. Milwaukee County v. WCCJ,* 73 Wis.2d 237, 241, 243 N.W.2d 485 (1976), citing *Recht-Goldin-Siegal Const. v. Dept. of Revenue,* 64 Wis.2d 303, 306, 219 N.W.2d 379 (1974).

[6] *Id.* at 241, quoting *Honeywell, Inc. v. Aetna Casualty & Surety Co.,* 52 Wis.2d 425, 429, 190 N.W.2d 499 (1971).

may attach any condition to probation under the Youthful Offenders Act that is reasonable. Given the facts of this case and the reasons stated by the trial court for the imposition of confinement with work release privileges, we would have no difficulty in affirming the disposition made as reasonable under these circumstances. But that claim is not here made. It is enough to hold that the imposition of a period of confinement with work release privileges, as a condition of probation, was not beyond the authority of a trial judge who is empowered by the legislature to attach any "reasonable condition" to a probation disposition under the Youthful Offenders Act. Under the law of this state it is the "popular or reasonable import of words" that is to furnish the general rule for the interpretation of statutes ". . . and in construing a statute the court is not at liberty to disregard the plain clear words of the statute."[7]

In seeking a different result, defendant contends that in construing the Youthful Offenders Act this court should apply the doctrine of *expressio unius est exclusio alterius*. We are reminded that we, recently enough, applied this rule in construing the Children's Code of this state.[8] However in that case this court concluded that ch. 48, the Children's Code, on its face evidenced a legislative intent to enumerate specifically the powers conferred under it. Sec. 48.28 of the Children's Code states that no child may be taken into immediate custody except in an enumerated list of circumstances. A similar basis in the statutory language for finding that an enumeration of powers granted excludes all powers not thus

[7] *Id.* at 242, citing *A. O. Smith Corp. v. Department of Revenue,* 43 Wis.2d 420, 429, 168 N.W.2d 887 (1969).

[8] *See: State ex rel. Harris v. Larson,* 64 Wis.2d 521, 219 N.W.2d 335 (1974).

enumerated does not exist as to the conditions to probation section of the Youthful Offenders Act. The statute before us in this case does list certain specific conditions that may be attached to a grant of probation, but it prefaces the enumeration with the phrase "including, but not limited to." There must be some factual evidence that the legislature intended the application of the *expressio unius* rule.[9] As to the statute here involved, not only is such evidence lacking, but the clear and unmistakable words of the statute provide that the conditions of probation available to a trial court include but are not limited by those subsequently listed.

Putting a different arrow to the bow, defendant contends that application of the doctrine of *ejusdem generis* could and should be applied to strip the trial court of its otherwise broad power under the Act to impose reasonable conditions of probation. The doctrine of *ejusdem generis* is intended to prevent words in a statute from being superfluous. To that end it provides that when a general word is used in a statute, either preceded or followed by specific words in an enumeration, the general word is construed to embrace something similar to the specific word.[10] Defendant argues that since all three specific examples of permissible conditions of probation following the general grant of authority to impose "reasonable conditions of probation" relate to types of payments of money, the only "reasonable conditions"

[9] *Columbia Hospital Asso. v. Milwaukee*, 35 Wis.2d 660, 665, 151 N.W.2d 750 (1967). In that case this court observed of the rule of *expressio est exclusio alterius*, "Although based upon logic and the working of the human mind, it is not a 'Procrustean standard to which all statutory language must be made to conform.' " Quoting *State ex rel. West Allis v. Milwaukee Light, Heat & Traction Co.*, 166 Wis. 178, 182, 164 N.W. 837, 839 (1917).

[10] *See: National Amusement Co. v. Dept. of Revenue*, 41 Wis.2d 261, 163 N.W.2d 625 (1969); *State ex rel. Thompson v. Nash*, 27 Wis.2d 183, 133 N.W.2d 769 (1965).

authorized by the statute are those which require payments. However, for the doctrine of *ejusdem generis* to apply, the class of objects to which the general word is restricted must be germane to the objectives of the enactment.[11] The listed types of money payments which may be made conditions of probation, *i.e.*, restitution, costs of prosecution and support, have only peripheral, not primary relevance, to the broad purposes of the Youthful Offenders Act, as set forth in sec. 54.01(2), Stats., 1975.[12] Thus the rule of *ejusdem generis* is not available to transform the provision authorizing the trial court to attach reasonable conditions of probation into a ban on any conditions of probation which do not require payments of money.

Finally, defendants contend that under the Youthful Offenders Act a trial court cannot directly confine a youthful offender in a county jail not previously approved by the department of health and social services and therefore ". . . does not have the power to do so indirectly under the 'reasonable conditions' of sec. 54.04 (2), Stats."[13] Under the Act, once a defendant has been determined to be a youthful offender, the trial court has two options: (1) to place the offender on probation,

[11] *National Amusement Co. v. Dept. of Revenue, supra. See also:* 2A Sutherland, *Statutory Construction,* sec. 47.22 (1973).

[12] Sec. 54.01(2), Stats., 1974, states the intent of the Youthful Offenders Act as: "The intent of this chapter is to provide a specialized correctional program for youthful offenders who are found guilty in the criminal courts. The program grows out of the increasing public concern with the disproportionately high incidence of criminality and recidivism among youthful offenders. Recognizing that these individuals are in their formative years, with an adult lifetime ahead of them, it is to the advantage of society to concentrate on specialized treatment efforts. It is the intent of this chapter to provide an alternative to procedures in the criminal code relating to conviction and sentencing. This chapter is to be liberally construed to effect its objectives."

[13] Appellant's Brief at page 8.

or (2) to commit him to the department. It is only under the second option, when the defendant is committed to the custody of the department, that the Act provides that ". . . the court may order the person conveyed to some place of detention approved or established by the department."[14] Even when a youthful offender is committed to the custody of the department, the trial court ". . . may direct that the person be left at liberty until otherwise ordered by the department under such conditions as in the opinion of the court will ensure the youthful offender's submission to any orders which the department may issue."[15] However, this provision too applies only when a youthful offender is committed into the custody of the department. Neither provision can be stretched to apply when the trial court rejects commitment to the custody of the department and elects instead to place the youthful offender on probation subject to such reasonable conditions as the trial court may see fit to impose. To import into the probation option all of the consequences of the commitment option would be, not to construe, but to rewrite the youthful offender law. That is a job for the legislature, not for this court. Given the plain and unmistakable language of the statute, we are obliged to apply the law as it is written, not as it might well have been written, or as it might some day be rewritten by the state legislature. We conclude that the trial court had authority to require as a condition of probation that this defendant be confined in the Outagamie county jail for six months with work release privileges.

*By the Court.*—Order affirmed.

---

[14] Sec. 54.07(2), Stats. *See also:* Secs. 54.10 and 54.11(1), Stats.

[15] Sec. 54.07(2), Stats.